You got an order on me where I can not ask legal advice of Standby counsel and you won't release me to my mother and this place won't give me any meaningful access to their law library Honour thy Father and Mother which is the first commandment with promise

Dear Judge Myers,

You are bias against me really having a valid defense when you said yourself w/o counsel legal defenses could be lost come on Sir that's not fair.

The officers here are playing games with the law library and are not letting me access it. They have seen the pro se order from the court and copied it and everything. They let people represented by counsel access the law library but deny me access because they are bias and feel threatened by a pro se defendant that knows how to read and will work. It is State interference in my right to present a meaningful defense.

Mr. Boykin just left from visiting me and presented me with a plea and wanted an answer to the plea by Nov. 4 2020 but I can not research the guidelines or ACCA so I can't enter a plea knowingly, intelligently and voluntarily without being able to research it on the law library. Which made me feel like he is trying to pressure me into taking a plea unintelligently. I explained to him the situation with the law library and as far as I know he made no effort to explain the situation to the administration here. So in affect expects me or is trying to coerce me into taking a plea I can't research. I will continue to petition the administration here for access to their law library and if there is anything the court can do perhaps contacting the administration here I would appreciate it. The lower staff here is obstructing me from working on my case. I know I have a good defense (what's left of it after this delay) But I am being crippled and sabotaged by bias officers.

Sincerely,

Kevin Vaughn

I was originally thinking a three ring binder and ironically my Mom said online it says Judge Myers prefers motions to be submitted in a three ring binder so my Mom has ordered some from Amazon so I am trying to present my motions to the court as professional as possible but these people are hindering me at every step. They are reading all my confidential legal mail listening to all my calls containing work product for my defense.

Judge, you are detaining me against a three count indictment two counts of which you said can carry a maximum penalty of life. I think its only fair to give me a real opportunity to defend myself.

The hand is quicker than the eye...

Judge Myers, Never been one to talk about or believe in conspiracy theories. But this is a strong conspiracy like in the days of David and Absalom (2 Samuel 15:10). It's happening right in front of your face and you don't see it. And I'm not trippin that the government has conspired against me to this magnitude.

I am really only offended because if they will do this to me they will do it to anyone like the weak and defenseless that can not defend themselves, that can't read, or are hispanic and can not read english or speak english whose lawyers don't know whats really going on (like mine didn't). Or the ignorant, uneducated and poor which gives me indignation.

But if your going to keep being biased toward me you will never see it. I'm trying to put it all in a motion to you to be submitted by hand at my arraignment but I am terrified one of these officers will take it and say they accidently left it on the back bumper of the van and it blew away.

The hand is quicker than the eye.

Or should I say the executive hand is quicker than the judicial eye...

*Judge Myers are you familiar with this line of cases? Check out the part outlined and highlighted in pen please.*

**UNITED STATES OF AMERICA, Plaintiff-Appellee, v. CURTIS DELMONT WOOLFOLK, Defendant-Appellant.**

**UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT**

**399 F.3d 590; 2005 U.S. App. LEXIS 3504**

**No. 04-4260**

**December 3, 2004, Argued**

**March 2, 2005, Decided**

**Editorial Information: Subsequent History**

Motion denied by, On remand at United States v. Woolfolk, 2005 U.S. Dist. LEXIS 36993 (W.D. Va., Aug. 31, 2005)

**Editorial Information: Prior History**

Appeal from the United States District Court for the Western District of Virginia, at Charlottesville. (CR-03-79-NKM). Norman K. Moon, District Judge.

**Disposition:**

Remanded to district court.

**Counsel**      ARGUED: Roy David Bradley, Madison, Virginia, for Appellant. William Frederick Gould, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlottesville, Virginia, for Appellee.

ON BRIEF: John L. Brownlee, United States Attorney, Roanoke, Virginia, for Appellee.

**Judges:** Before WILLIAMS and MICHAEL, Circuit Judges, and Henry F. FLOYD, United States District Judge for the District of South Carolina, sitting by designation. Judge Williams wrote the opinion, in which Judge Floyd concurred. Judge Michael wrote a separate opinion concurring in the judgment and concurring in part.

**CASE SUMMARY**

**PROCEDURAL POSTURE:** Defendant pled guilty to one count of possession with intent to distribute more than five grams of crack cocaine, in violation of 21 U.S.C.S. 841(a)(1), while reserving the right to challenge his prosecution as violating the Speedy Trial Act, 18 U.S.C.S. 3161(b), and the Sixth Amendment. The U.S. District Court for the Western District of Virginia, at Charlottesville, rejected both of defendant's claims. Defendant appealed. Where state proceedings terminated on April 10, but the federal indictment was not filed until August 7, a remand was necessary for the district court to determine when the Government knew or should have known that defendant was being held by the state solely because of the federal detainer, triggering the Speedy Trial Act, 18 U.S.C.S. 3161(b).

**OVERVIEW:** The Government's filing of a complaint, serving of an arrest warrant, and lodging of that warrant as a detainer on January 9, while defendant was in state custody answering to state charges, did not activate the provisions of the Speedy Trial Act. However, the state proceedings terminated on April 10, but the federal indictment was not filed until August 7. The court determined that a remand was necessary for the district court to determine when the Government knew or should have known that defendant was being held by the state solely because of the federal detainer. Further, the court found that the filing of the detainer, warrant, and complaint on January 9, 2003, triggered defendant's Sixth

Amendment speedy trial rights. He was indicted on August 7, almost eight months later, and pleaded guilty on December 19, almost a full year after his Speedy Trial rights attached. Regardless of whether the relevant period of postaccusation delay was from January 9 to August 7 or from January 9 to December 19, the postaccusation delay was presumptively prejudicial and defendant had satisfied the threshold Barker requirement. A remand for a full Barker analysis was required.

**OUTCOME:** The court remanded for further consideration of whether defendant was subject to any restraint resulting from federal action that triggered the Speedy Trial Act's provisions, and for a full consideration of defendant's Sixth Amendment claim.

**LexisNexis Headnotes**

*Criminal Law & Procedure > Appeals > Standards of Review > Clearly Erroneous Review > General Overview*

*Criminal Law & Procedure > Appeals > Standards of Review > De Novo Review > General Overview*

*Criminal Law & Procedure > Pretrial Motions > Dismissal*

*Criminal Law & Procedure > Appeals > Standards of Review > Clearly Erroneous Review > Findings of Fact*

*Criminal Law & Procedure > Appeals > Standards of Review > De Novo Review > Motions to Dismiss*

*Criminal Law & Procedure > Appeals > Standards of Review > De Novo Review > Speedy Trial*

Appellate courts review a district court's factual findings on a motion to dismiss an indictment for clear error, but they review its legal conclusions de novo.

*Criminal Law & Procedure > Pretrial Motions > Speedy Trial > Statutory Right*

See 18 U.S.C.S. 3161(b).

*Criminal Law & Procedure > Pretrial Motions > Speedy Trial > Statutory Right*

If the Government fails to comply with the requirements of 18 U.S.C.S. 3161(b), the complaint shall be dismissed or otherwise dropped. 18 U.S.C.S. 3162(a)(1). Courts have interpreted that language to provide that the Government must charge a defendant by indictment or information within 30 days of his federal arrest upon a federal charge or face the prospect of dismissal.

*Criminal Law & Procedure > Pretrial Motions > Speedy Trial > Statutory Right*

The Speedy Trial Act is intended to mandate an orderly and expeditious procedure for federal criminal prosecutions by fixing specific, mechanical time limits within which the various progressions in the prosecution must occur.

*Criminal Law & Procedure > Pretrial Motions > Speedy Trial > Statutory Right*

*Criminal Law & Procedure > Preliminary Proceedings > Detainer > General Overview*

*Criminal Law & Procedure > Preliminary Proceedings > Detainer > Timing*

*Criminal Law & Procedure > Pretrial Motions > Speedy Trial > General Overview*

*Holding back discovery against the law  NCGS 902-903*

When an individual is lawfully being held to answer to state charges, a criminal complaint coupled with an unexecuted arrest warrant and a federal detainer do not trigger the Speedy Trial Act.

*Criminal Law & Procedure > Pretrial Motions > Speedy Trial > Statutory Right*

The notion of dual sovereignty recognizes that the federal government is not bound by the actions of state authorities and that successive state and federal prosecutions are constitutionally permissible. As another circuit has explained, one sovereign's actions should not force the other sovereign to proceed with a prosecution before it is ready.

*Criminal Law & Procedure > Pretrial Motions > Speedy Trial > Statutory Right*

*Criminal Law & Procedure > Interrogation > Miranda Rights > Custodial Interrogation*

For the Speedy Trial Act to apply, the defendant must be under "federal arrest" or be in "federal custody."

*Criminal Law & Procedure > Pretrial Motions > Speedy Trial > Statutory Right*

*Criminal Law & Procedure > Pretrial Motions > Speedy Trial > General Overview*

For the 30-day time limit of the Speedy Trial Act to commence, a person must be held for the purpose of answering to a federal charge. Thus, if one is held by state officers on a state charge and subsequently turned over to federal authorities for federal prosecution, the starting date of the time period is the date that the defendant is delivered into federal custody. However, if the person is held in state custody at the request of federal authorities, the date of arrest by the state officers is controlling.

*Criminal Law & Procedure > Pretrial Motions > Speedy Trial > Statutory Right*

*Criminal Law & Procedure > Pretrial Motions > Speedy Trial > General Overview*

The provisions of the Speedy Trial Act can be triggered by something other than actual federal custody and federal arrest, i.e., any restraint resulting from federal action.

*Criminal Law & Procedure > Pretrial Motions > Speedy Trial > Statutory Right*

*Criminal Law & Procedure > Pretrial Motions > Speedy Trial > General Overview*

*Criminal Law & Procedure > Pretrial Motions > Speedy Trial > Excludable Time Periods*

Under the ruse exception, Speedy Trial Act time periods may be triggered by state detentions that are merely a ruse to detain the defendant solely for the purpose of bypassing the requirements of the Act.

***Criminal Law & Procedure > Pretrial Motions > Speedy Trial > Statutory Right***

***Criminal Law & Procedure > Preliminary Proceedings > Detainer > General Overview***

***Criminal Law & Procedure > Pretrial Motions > Speedy Trial > General Overview***

In the context of the Speedy Trial Act, the phrase "federal action," in our view, requires a showing that the Government knew or should have known that the defendant was restrained solely to answer federal charges. Permitting the Speedy Trial Act's provisions to apply whenever a state has concluded its prosecution but failed to notify the Government would be an undesirable result.

***Criminal Law & Procedure > Pretrial Motions > Speedy Trial > Constitutional Right***

***Constitutional Law > Bill of Rights > Fundamental Rights > Criminal Process > Speedy Trial***

***Criminal Law & Procedure > Preliminary Proceedings > Detainer > General Overview***

***Criminal Law & Procedure > Preliminary Proceedings > Detainer > Challenges***

***Criminal Law & Procedure > Preliminary Proceedings > Detainer > Timing***

***Criminal Law & Procedure > Trials > Defendant's Rights > Right to Public Trial***

See U.S. Const. amend. VI.

***Criminal Law & Procedure > Pretrial Motions > Speedy Trial > Constitutional Right***

***Criminal Law & Procedure > Trials > Burdens of Proof > Defense***

In order to prove a Sixth Amendment violation, a defendant must show first that the amendment's protections have been triggered by arrest, indictment, or other official accusation.

***Criminal Law & Procedure > Pretrial Motions > Speedy Trial > Constitutional Right***

***Constitutional Law > Bill of Rights > Fundamental Rights > Criminal Process > Speedy Trial***

***Criminal Law & Procedure > Pretrial Motions > Speedy Trial > General Overview***

If the Sixth Amendment protections apply, courts must make four separate inquiries: whether delay before trial was uncommonly long, whether the government or the criminal defendant is more to blame for that delay, whether, in due course, the defendant asserted his right to a speedy trial, and whether he suffered prejudice as the delay's result. In addition to being a factor, the first inquiry is also a threshold requirement, because simply to trigger a speedy trial analysis, an accused must allege that the interval

between accusation and trial has crossed the threshold dividing ordinary from presumptively prejudicial delay. After the defendant makes this threshold showing, he must show on balance, that the four inquiries weigh in his favor.

***Criminal Law & Procedure > Pretrial Motions > Speedy Trial > Constitutional Right***

***Constitutional Law > Bill of Rights > Fundamental Rights > Criminal Process > General Overview***

***Constitutional Law > Bill of Rights > Fundamental Rights > Criminal Process > Speedy Trial***

***Criminal Law & Procedure > Preliminary Proceedings > Detainer > General Overview***

***Criminal Law & Procedure > Preliminary Proceedings > Detainer > Timing***

***Criminal Law & Procedure > Pretrial Motions > Speedy Trial > General Overview***

The combination of a criminal complaint, arrest warrant, and federal detainer are sufficient to implicate the speedy trial provision of the Sixth Amendment.

***Criminal Law & Procedure > Pretrial Motions > Speedy Trial > Constitutional Right***

Post-accusation delay is presumptively prejudicial at least as it approaches one year. One year is the point at which courts deem the delay unreasonable enough to trigger the Barker inquiry.

***Criminal Law & Procedure > Pretrial Motions > Speedy Trial > Constitutional Right***

***Criminal Law & Procedure > Preliminary Proceedings > Detainer > General Overview***

***Criminal Law & Procedure > Preliminary Proceedings > Detainer > Timing***

It may generally be said that any delay of eight months or longer is presumptively prejudicial.

*[handwritten: Was indicted 8 months after arrest but not shown or served with indictment or appointed counsel until ~~8~~ 13 mos. after arrest]*

**Opinion**

**Opinion by:    WILLIAMS**

**Opinion**

**{399 F.3d 592} WILLIAMS, CIRCUIT JUDGE:**

**Curtis Delmont Woolfolk pleaded guilty to one count of possession with intent to distribute more than five grams of crack cocaine, in violation of 21 U.S.C.A. 841(a)(1) (West 1999), while reserving the right to challenge his prosecution as violating the Speedy Trial Act, 18 U.S.C.A. 3161(b) (West 2000) and his Sixth Amendment right to a speedy trial. The district court rejected both of Woolfolk's claims, and, for the following reasons, we remand the case to the district court for**

further proceedings. We remand for further consideration of whether Woolfolk was subject to "any restraint resulting from federal action" that triggered the Speedy Trial Act's provisions. *United States v. Lee*, 818 F.2d, 302, 305 (4th Cir. 1987). Because of the factual uncertainty regarding Woolfolk's detention, we also remand the case for a full consideration of Woolfolk's Sixth Amendment claim under *Barker v. Wingo*, 407 U.S. 514, 33 L. Ed. 2d 101, 92 S. Ct. 2182 (1972).

I.

On December 15, 2002, Detective David Harris was assigned to a sobriety checkpoint in downtown Charlottesville, Virginia. At approximately 2 a. m., a 1991 Lincoln approached the checkpoint and turned into another lane in an effort to avoid it. Detective Harris began a pursuit of the vehicle and effected a stop. Harris approached the car and observed that the {399 F.3d 593} driver of the vehicle, Woolfolk, appeared to be intoxicated. Harris also had personal knowledge that Woolfolk was involved in drug activities. During the traffic stop, several Charlottesville residents who had been standing nearby watching the stop approached Woolfolk's vehicle and attempted to gain entry. Harris heard Woolfolk tell one such individual that "it's between the seats." (J.A. at 6.) Woolfolk was arrested for driving under the influence. Following the arrest, Harris performed a search of the vehicle and found eight grams of crack cocaine in the center console. 1

On December 18, 2002, the United States (the Government) filed a criminal complaint against Woolfolk in the United States District Court for the Western District of Virginia, alleging that Woolfolk knowingly possessed with intent to distribute five grams or more of crack cocaine, in violation of 21 U.S.C.A. 841(a)(1). An arrest warrant for Woolfolk was issued on the same date. At the time, Woolfolk was in the custody of Virginia authorities pending trial on state charges stemming from the December 15 arrest. 2 On January 9, 2003, the Government issued a federal detainer to the state authorities. The detainer specified that a federal arrest warrant had been issued against Woolfolk. The detainer also requested that "prior to the subject's release from your custody, please notify this office at once so that we may assume custody if necessary." (J.A. at 13.) The detainer also was to be served on Woolfolk, but he contends that he received the warrant but not the detainer. *Never seen any charging information from the State or the Feds*

Although Woolfolk's state proceedings were terminated on April 10, 2003, Woolfolk was not released by the state authorities at that time. 3 The record contains no evidence as to why the state continued to detain Woolfolk after April 10. At a hearing before the district court on Woolfolk's motion to dismiss, Woolfolk contended that, after April 10, "there can be no other interpretation" of the record but that Woolfolk was being held only because of the federal detainer. (J.A. at 22.) The district court responded, "that seems to be conceded, that the only thing keeping him in jail was a federal detainer." (J.A. at 22.) Woolfolk answered that question in the affirmative, and the Government did not respond. On appeal, however, the Government contends that Virginia failed, as an administrative matter, properly to process the termination of Woolfolk's state charges and therefore was holding him on the dismissed state charges instead of the federal detainer.

Although it remains unclear why Woolfolk remained in state custody, at some point, apparently after Woolfolk filed a state habeas claim, the Government became aware that Woolfolk was still in state custody even though no proceedings remained against him in the state system. {399 F.3d 594} At oral argument before the district court, the Government asserted that "when [Woolfolk's] situation was brought to [the Government's] attention, [it] brought him over federally and executed the complaint." (J.A. at 21.) This action occurred on July 10, 2003, when the Government executed its December 18 arrest warrant and brought Woolfolk before a magistrate judge for his initial appearance. On August 7, the federal grand jury indicted Woolfolk on one count of violating 841(a)(1).

On August 22, Woolfolk filed a motion to dismiss the indictment, alleging that the delay between the filing of the complaint and arrest warrant and serving of the detainer and the indictment violated the Speedy Trial Act, 18 U.S.C.A. 3161(b), and his Sixth Amendment rights to a speedy trial. The district court heard arguments on the dismissal motion and, on October 2, 2003, issued an order denying it. Woolfolk subsequently entered a conditional guilty plea, which reserved his right to appeal the district court's denial of the dismissal motion. Woolfolk was sentenced to sixty months imprisonment on March 12, 2004, and filed a timely appeal on March 18. We have jurisdiction pursuant to 28 U.S.C.A. 1291 (West 1999).

II.

On appeal, Woolfolk contends that the Government's delay in indicting him violated both the Speedy Trial Act and the Sixth Amendment and that accordingly, the district court erred in failing to grant his motion to dismiss. We address each argument in turn.

### A. Speedy Trial Act

We review the district court's factual findings on a motion to dismiss an indictment for clear error, but we review its legal conclusions de novo. *United States v. Good*, 326 F.3d 589, 591 (4th Cir. 2003). The Speedy Trial Act provides, in relevant part, that "any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such offense." 4 18 U.S.C.A. 3161(b). If the Government fails to comply with this requirement, the "complaint shall be dismissed or otherwise dropped." 18 U.S.C.A. 3162(a)(1). We have interpreted this language to provide that the Government must charge a defendant by indictment or information within 30 days of his "federal arrest upon a federal charge" or face the prospect of dismissal. *United States v. Thomas*, 55 F.3d 144, 148 (4th Cir. 1995) (quoting *United States v. Lee*, 818 F.2d 302, 305 (4th Cir. 1987)). The Act "is intended to mandate an orderly and expeditious procedure for federal criminal prosecutions by fixing specific, mechanical time limits within which the various progressions in the prosecution must occur." *United States v. Iaquinta*, 674 F.2d 260, 264 (4th Cir. 1982).

On appeal, Woolfolk argues that the provisions of the Speedy Trial Act were triggered on January 9, when the Government lodged a detainer against him with the state because, on that date, the Government had issued a complaint, served an arrest warrant, and lodged a detainer with the state. In the alternative, Woolfolk contends that the Act's 30 day time limit began on April 10, when the state concluded its prosecution but continued holding him, allegedly because of the federal detainer. The Government counters that {399 F.3d 595} Woolfolk was not subject to "federal arrest" or "federal custody on a federal charge," *see Thomas*, 55 F.3d at 148, until July 10, when the magistrate judge issued the temporary detention order. With July 10 as the starting date, the Government notes, the August 7 indictment complies with the dictates of the Act. 5

Woolfolk's contention that the protections of the Speedy Trial Act were triggered on January 9 is foreclosed by our holding in *Thomas*. In *Thomas*, state authorities were detaining the defendant on state charges when the Government filed a criminal complaint, secured an arrest warrant, and lodged the arrest warrant as a detainer with the state authorities. *Id.* at 147. Thomas remained in the custody of state authorities facing state charges for more than two years. *Id.* The state authorities concluded their prosecution, and the Government indicted Thomas within thirty days of the termination of the state prosecution. *Id.* We rejected Thomas's argument that the complaint, warrant and detainer activated the requirements of the Speedy Trial Act, finding that, when an individual is lawfully being held to answer to state charges, a "criminal complaint coupled with an unexecuted arrest warrant and a federal detainer" do not trigger the Act. *Thomas*, 55 F.3d at 148.

*See also* Lee, 818 F.2d at 303 (finding that the Act requires a federal arrest upon a federal charge and rejecting defendant's argument that filing of complaint, arrest warrant and detainer on individual being held in state custody on state charges constituted a federal arrest on a federal charge). 6 Accordingly, under the binding precedent of *Thomas*, the Government's filing of a complaint, serving of an arrest warrant, and lodging of that warrant as a detainer on January 9, while Woolfolk was in state custody answering to state charges, did not activate the provisions of the Speedy Trial Act.

Woolfolk's second argument, that the Speedy Trial Act's thirty-day time limit for filing an indictment began on April 10, when his state proceedings terminated but his detention continued, gives us pause. Neither *Thomas* nor *Lee* specifically address that argument. In both of those cases, the federal indictment was filed within thirty days of the termination of the state proceedings. Here, the state proceedings terminated on April 10, but the federal indictment was not filed until August 7. In fact, we have found no caselaw that addresses the specific factual situation before us. A canvas of our caselaw in this area, however, does provide us guidance on how to proceed in this case. First, as *Thomas* makes clear, for the Act to apply, the defendant must be under "federal arrest" or be in "federal custody." The relevant question thus becomes whether an individual being held by state authorities is ever under "federal arrest" or in "federal custody." The answer, at least while a state has valid charges currently {399 F.3d 596} pending against an individual, is "no." We believe however, that in limited circumstances, this question can be answered in the affirmative. In *Iaquinta*, we cited, with approval, the following passage from a law review article:

For this [thirty-day time] limit to commence, a person *must be held for the purpose of answering to a federal charge*. Thus, if one is held by state officers on a state charge and subsequently turned over to federal authorities for federal prosecution, the starting date of the time period is the date that the defendant is delivered into federal custody. However, *if the person is held in state custody at the request of federal authorities, the date of arrest by the state officers is controlling.Iaquinta*, 674 F.2d at 267 (quoting Martoche, *The Federal Speedy Trial Act: An Introduction and Guide*, 4 Nat. Journal of Criminal Def. 295 (1978)) (emphases added). In *Lee*, we again quoted, with approval, the suggestion that "for the time limit of the Act to commence a person must be held for the purpose of answering a *federal* charge." *Lee*, 818 F.2d at 304 (quoting *United States v. Shahryar*, 719 F.2d 1522, 1524-25 (11th Cir. 1983) (emphasis in original)). We then reiterated that "to the knowledge of this Court, [no] other Court [has] stated -- that a federal complaint without federal arrest *or any restraint resulting from federal action* brings the combination of 18 3161(b) and 3162(a)(1) into play." *Id.* at 305 (emphasis added). Thus, *Lee* makes explicit that the provisions of the Speedy Trial Act can be triggered by something other than *actual* federal custody and federal arrest, i.e., "any restraint resulting from federal action." *Id.* Although *Lee* does not discuss the parameters of this language, we believe that a "restraint resulting from federal action," sufficient to trigger the time limits of the Speedy Trial Act, occurs when the Government has knowledge that an individual is held by state authorities solely to answer to federal charges. 7

The phrase "federal action," in our view, requires a showing that the Government knew or should have known that the defendant was restrained solely to answer federal charges. Permitting the Speedy Trial Act's provisions to apply whenever a state has concluded its prosecution but failed to notify the Government would be an undesirable result. Given the breadth of the Government's criminal prosecutions, and what must be the sheer number of federal detainers lodged with state authorities, to impose a form of strict liability upon the Government for actions taken by independent sovereigns would be detrimental to the administration of justice. Instead, the Speedy Trial Act's purpose is best served if its provisions are triggered in those instances where the Government has knowledge that an individual is being held by state authorities only to answer to federal charges. In such situations, we believe an individual would be subject to a "restraint resulting from federal action." *Id.*

Applying this rule to the facts before us, we believe a remand to the district court is necessary. First, it is unclear whether, after April 10, Woolfolk remained in state custody only to answer to federal charges. On remand, the district court should consider whether the state continued to hold Woolfolk because of the federal detainer, {399 F.3d 597} or because, as the Government alleges before this court, the state failed to process the termination of Woolfolk's state charges. Moreover, even if we assume that Woolfolk was being held by the state solely because of the federal detainer from April 10 to July 10, thus making him subject to a "restraint" during that period, it is not clear, on the facts as currently developed, that the restraint was a result of "federal action." The record does not show when the Government knew or should have known that Woolfolk was being held solely because of the federal detainer.

In sum, we must remand the case for the district court to determine when the Government knew or should have known that Woolfolk was being held by the state solely because of the federal detainer. If the Government knew or should have known before July 8, then the Government violated the Act, and Woolfolk's indictment should be dismissed.

### B. Sixth Amendment Speedy Trial Rights

Woolfolk next argues that his Sixth Amendment rights were violated by the delay following the issuance of the federal detainer on January 9. The Sixth Amendment provides that "in all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. In order to prove a Sixth Amendment violation in this context, a defendant "must show first that the Amendment's protections have been triggered by 'arrest, indictment, or other official accusation.'" *Thomas*, 55 F.3d at 148 (quoting *Doggett v. United States*, 505 U.S. 647, 655, 120 L. Ed. 2d 520, 112 S. Ct. 2686 (1992)).

If the Sixth Amendment protections apply, we must make "four separate inquiries: whether delay before trial was uncommonly long, whether the government or the criminal defendant is more to blame for that delay, whether, in due course, the defendant asserted his right to a speedy trial, and whether he suffered prejudice as the delay's result." 8 *Doggett*, 505 U.S. at 651. In addition to being a factor, the first inquiry is also a threshold requirement, because "simply to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from presumptively prejudicial delay." *Id.* at 651-652 (quotation marks omitted). After the defendant makes this threshold showing, he "must . . . show on balance," that the four inquiries weigh in his favor. *Thomas*, 55 F.3d at 148.

Under *Thomas*, the filing of the detainer, warrant and complaint on January 9, 2003, triggered Woolfolk's Sixth Amendment speedy trial rights. *See Thomas*, 55 F.3d at 149 (holding that "the combination of the criminal complaint, the arrest warrant, and the federal detainer were sufficient to implicate the speedy trial provision of the Sixth Amendment"). He was indicted on August 7, almost eight months later, and pleaded guilty on December 19, almost a full year after his Speedy Trial rights attached.

The Supreme Court has counseled that "postaccusation delay [is] presumptively prejudicial at least as it approaches one year." *Doggett*, 505 U.S. at 652 n. 1. One year is the "point at which courts deem the delay unreasonable enough to trigger the *Barker* inquiry." {399 F.3d 598} *Id.* The Supreme Court, however, has never offered guidance on what the phrase "postaccusation *delay*" encompasses, and in this case it is unclear whether the time from January 9 to December 19, or from January 9 to August 7, is the proper measure. 9 Even assuming, however, that the relevant period of "postaccusation delay" is the period from the serving of the detainer, arrest warrant, and complaint on January 9 to the filing of the indictment on August 7, we believe that Woolfolk has met the threshold *Barker* requirement. As one commentator explains, "it may generally be said

that any delay of eight months or longer is presumptively prejudicial." 4 WAYNE R. LAFAVE, JEROLD H. ISRAEL, & NANCY J. KING, CRIMINAL PROCEDURE 18.2(b) (2d ed. 1999) (quoting Joseph, *Speedy Trial Rights in Application*, 48 Fordham L. Rev. 611, 623 n. 71 (1980)). Although the eight month threshold is a general rule and not a rigid requirement, *see United States v. Cope*, 312 F.3d 757, 778 (6th Cir. 2002) (finding eight month delay was "substantial" but not "presumptively prejudicial" in "two-defendant, eleven-count case that involves multiple allegations of attempted murder"), given the fact that Woolfolk's case involves little complexity, we see no reason to deviate from that general rule here. Thus, regardless of whether the relevant period of postaccusation delay is from January 9 to August 7 or from January 9 to December 19, the postaccusation delay in this case was presumptively prejudicial and Woolfolk has satisfied the threshold *Barker* requirement.

Although Woolfolk has satisfied the threshold requirement, that fact by no means ends our *Barker* inquiry. We have previously found no Sixth Amendment violation in cases involving time periods much greater than that at issue here. *See United States v. Grimmond*, 137 F.3d 823, 827 (4th Cir. 1998) (thirty-five months); *Thomas*, 55 F.3d at 149-150 (two and a half years). At this stage in the analysis, we typically would examine the remaining *Barker* inquiries in order to determine if Woolfolk's Sixth Amendment rights were violated. On the record before us, however, we believe that a remand to the district court is more appropriate. The *Barker* inquiry is a "fact-intensive inquiry," *Cope*, 312 F.3d at 778, and, given the uncertainty regarding the cause of Woolfolk's detention after April 10, we believe that the district court is in the best position to conduct a full *Barker* analysis.

III.

For the foregoing reasons, we remand the case to the district court for further consideration of Woolfolk's Speedy Trial Act and Sixth Amendment claims.

*REMANDED*

Concur

Concur by:     MICHAEL

MICHAEL, Circuit Judge, concurring in the judgment and concurring in part:
I concur in the judgment entered by the majority, which remands for further consideration of Curtis Woolfolk's Sixth Amendment and Speedy Trial Act claims. I also concur fully in the reasoning in part II.B of the majority opinion, which deals with Woolfolk's claim that his speedy trial rights were denied under the Sixth Amendment. I respectfully disagree, however, with the majority's conclusion in part II. A that a federal detainer does not trigger{399 F.3d 599} Speedy Trial Act rights until "the Government has knowledge that an individual is being held by state authorities only to answer to federal charges." *Ante* at 8. I would have the district court analyze the Speedy Trial Act claim under a different standard -- a standard that serves the Act's purpose of achieving the prompt disposition of criminal cases. Specifically, the Speedy Trial Act's thirty-day indictment clock should be triggered at the point when a state holds a prisoner under the sole authority of a federal detainer.
Woolfolk was locked up in a Virginia jail in December 2002 to await the disposition of state criminal charges. On January 9, 2003, the U.S. Marshal for the Western District of Virginia lodged with the Virginia authorities a detainer against Woolfolk that was based on a warrant for his arrest on federal drug charges. The document was entitled "DETAINER AGAINST UNSENTENCED PRISONER." J.A. 13. The detainer stated that "the notice and speedy trial requirements of the Interstate Agreement on Detainers Act do NOT apply to this detainer because the subject is not currently serving a sentence of imprisonment." *Id.* The government thus did not volunteer to extend Woolfolk any rights under the Interstate Agreement on Detainers Act, which gives a

sentenced prisoner subject to a detainer the right to demand a prompt trial on the charges underlying the detainer, that is, a trial within 180 days. *See* 18 U.S.C. app. 2 2, art. 3. The detainer requested that the government be notified before Woolfolk was released so that it could assume physical custody. Woolfolk's state charges were disposed of on April 10, 2003, and he was then no longer subject to state custody. He was held in the state jail, however, until July 10, 2003, when he was finally picked up by the federal authorities. Woolfolk was indicted on federal charges on August 7, 2003. The question is whether he was being held solely to answer the federal charges after April 10, 2003. If he was, the government violated the Speedy Trial Act's requirement that he be indicted within thirty days after his arrest.

The Speedy Trial Act provides that "any . . . indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested . . . in connection with such charges." 18 U.S.C. 3161(b). Our circuit recognizes that "for the [indictment] time limit . . . to commence a person must be held for the purpose of answering [to] a federal charge." *United States v. Lee*, 818 F.2d 302, 304 (4th Cir. 1987) (internal quotation marks and citation omitted) (emphasis omitted). Assuming that all state charges against Woolfolk were disposed of on April 10, 2003, when he received a suspended sentence, there was no longer any valid state authority under which he could have been held. The Virginia authorities nevertheless continued to hold Woolfolk in custody. Thus, the only two possibilities are that (1) the state authorities held Woolfolk illegally, or (2) they detained him pursuant to valid federal authority (the detainer). The government maintains that a detainer like the one here serves to hold a defendant in custody once state grounds for detention have ended. The detainer thus functioned as a valid grant of federal authority to state law enforcement officials to hold the defendant on federal charges when, in the absence of the detainer, he would have been entitled to his release.

I will assume for this discussion that Woolfolk was not held on state charges after April 10. Woolfolk was "arrested . . . in connection with [the federal] charges," 18 U.S.C. 3161(b), some time on April 10 because that was when the state began detaining him solely on the basis of the outstanding federal detainer. {399 F.3d 600} Woolfolk was "held for the purpose of answering [to the] federal charge," *Lee*, 818 F.2d at 304, after April 10 because there was no other purpose for which the state could have legally detained him. The majority avoids this conclusion by taking language from *Lee* and construing it narrowly to excuse the government from its responsibilities under the Speedy Trial Act. The majority begins by citing *Lee* for the proposition that "the provisions of the Speedy Trial Act can be triggered by . . . 'any restraint resulting from federal action.'" *Ante* at 8 (quoting *Lee*, 818 F.2d at 305). The majority gets around this language by saying that there was no federal action here. There was federal action, however, when the U.S. Marshal lodged a detainer with state authorities, authorizing them to keep Woolfolk in custody if state process ended. Once Woolfolk's custody on the state charges ended on April 10, 2003, his continued "restraint" in the state jail "resulted from federal action," specifically, the federal detainer.

The majority suggests that there can be no qualifying federal action unless the government somehow "knew or should have known that the defendant was restrained solely to answer federal charges." *Ante* at 8. The government might not have known that Woolfolk was being held pursuant to the federal detainer after April 10, but it knew enough (by reason of its own actions) to be responsible for his detention after that date. The government filed the detainer secure in the knowledge that the detainer would serve to hold Woolfolk in custody if the state charges against him were disposed of. The majority says, however, that we cannot charge a prisoner's detention to the government unless it knows that the detainer has kicked in. Otherwise, according to the majority, we would be "imposing a form of strict liability upon the Government for actions taken by independent sovereigns." *Ante* at 8. Virginia did not reach its detention decision independently, however. The entire process began with federal action, the filing of a detainer, which authorized the state to continue custody on behalf of the federal government. The filing of the detainer was a conscious act, signifying the government's intention to authorize the state to act on its behalf. Because the government took the intentional step of authorizing the state to act on its behalf, the government would not be held strictly liable for some totally independent action taken by the state. If we do not charge the time Woolfolk was held under the federal detainer to the government, we allow the government to enjoy the advantages of the detainer system without

taking any responsibility.

The majority also attempts to justify its knowledge rule on the basis of "the breadth of the [federal] Government's criminal prosecutions and what must be the sheer number of federal detainers lodged with state authorities." *Ante* at 8. I am willing to accept that there are a fair number of federal detainers lodged against unsentenced prisoners in state custody. But I also expect it is fairly rare for state authorities to fail to notify the federal government that a state prisoner subject to a federal detainer is about to be free of state custody. States have every incentive to provide timely notification. In light of the costs and responsibilities of housing prisoners, state jailers are no doubt eager to transfer the custody of a prisoner subject to a federal detainer at the earliest possible moment. It appears that Woolfolk fell through the cracks, and the question is whether the federal government must be held responsible for the delay in his indictment. The majority is correct to point out that "administration of justice" concerns should be taken into account. But Congress has made the judgment, {399 F.3d 601} by its enactment of the Speedy Trial Act and the Interstate Agreement on Detainers Act, that justice is best served by prompt indictment and trial. There is no room to excuse the government for the delay when a defendant languishes in jail as a result of the government's detainer. I would have the district court determine on remand whether Virginia continued to hold Woolfolk solely because of the federal detainer. If it did, Woolfolk's Speedy Trial Act rights were violated, and the court should decide whether to dismiss the indictment with or without prejudice. See 18 U.S.C. 3162(a).

Footnotes

1

Although the record is unclear, Woolfolk apparently was taken into custody by Virginia authorities following this arrest. According to the limited record in this proceeding, Woolfolk was charged by Virginia with four violations of state law stemming from the December 15, 2002 arrest -- driving under the influence, manufacture of a controlled substance, refusal, and driving on a suspended operator's license.

2

Although we recognize that Virginia is a commonwealth, we use the familiar term "state" in lieu of "Commonwealth of Virginia."

3

One of the charges against Woolfolk was nolle prossed on February 20, 2003. On April 10, 2003, Woolfolk was found guilty of the charge of driving on a suspended operator's license and was given a suspended sentence of ten days imprisonment. Also on April 10, the remaining two state charges were nolle prossed.

4

Woolfolk contends that he was "arrested" within the meaning of 3161(b) but does not argue that he was "served with a summons." 18 U.S.C.A. 3161(b) (West 2000).

5

The district court found that Woolfolk was never in federal custody before his indictment. This conclusion is erroneous because, at a minimum, Woolfolk was in federal custody as of July 10, 2003 when the arrest warrant was executed and Woolfolk was transferred to federal custody.

6

The basis for the holding in *Thomas* and *Lee* is the notion of dual sovereignty, "which recognizes that 'the federal government is not bound by the actions of state authorities and that successive state and federal prosecutions are constitutionally permissible.'" *United States v. Iaquinta*, 674 F.2d 260, 264 (4th Cir. 1982) (quoting *United States v. Wilson*, 657 F.2d 755, 767 (5th Cir. 1981). As another circuit has explained, "one sovereign's actions should not force the other sovereign to proceed with a prosecution before it is ready." *United States v. Benitez*, 34 F.3d 1489, 1493 n.1 (9th Cir. 1994).

7

The language used in *Lee* is analogous to the "ruse" exception adopted in other circuits. *See, e.g., United States v. Cepeda-Luna*, 989 F.2d 353 (9th Cir. 1993). Under the ruse exception, "Speedy Trial Act time periods may be triggered by state detentions that are merely a ruse to detain the defendant solely for the purpose of bypassing the requirements of the Act." *United States v. Benitez*, 34 F.3d 1489, 1494 (9th Cir. 1994).

8

This four part balancing test was originally set forth in *Barker v. Wingo*, 407 U.S. 514, 33 L. Ed. 2d 101, 92 S. Ct. 2182 (1972), and is commonly referred to as the *Barker* balancing test.

9

Although Woolfolk's motion to dismiss seemed to target the delay from the serving of the detainer through his impending trial, before this court Woolfolk has centered his Sixth Amendment claim on the delay between the filing of the complaint, warrant, and detainer and his indictment, not between the indictment and trial or even the filing of the complaint, warrant, detainer and trial.

HEATHER SUE MERCER, Plaintiff-Appellee, v. DUKE UNIVERSITY, Defendant-Appellant, and FRED GOLDSMITH, Defendant.
UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
401 F.3d 199; 2005 U.S. App. LEXIS 3441
No. 04-1191
December 3, 2004, Argued
March 1, 2005, Decided

**Editorial Information: Prior History**

Appeal from the United States District Court for the Middle District of North Carolina, at Durham. (CA-97-959-1). James A. Beaty, Jr., District Judge. Mercer v. Duke Univ., 301 F. Supp. 2d 454, 2004 U.S. Dist. LEXIS 1592 (M.D.N.C., 2004)

**Disposition:**

**UNITED STATES OF AMERICA, Plaintiff-Appellant, v. ANDY EUGENE SELTZER, Defendant-Appellee.**
**UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT**
**595 F.3d 1170; 2010 U.S. App. LEXIS 3123**
**No. 08-1469**
**February 17, 2010, Filed**

**Editorial Information: Prior History**

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLORADO. (D.C. No. 1:06-CR-00453-LTB-1).

Counsel    Martha A. Paluch, Assistant United States Attorney (David M. Gaouette, Acting United States Attorney, and Dondi Osborne, Assistant United States Attorney, with her on the briefs), Denver, Colorado, for Appellant.

Virginia L. Grady, Assistant Federal Public Defender (Raymond P. Moore, Federal Public Defender, and David E. Johnson, Research and Writing Specialist with her on the brief), Denver, Colorado, for Appellee.

**Judges:** Before HENRY, Chief Judge, SEYMOUR, and HOLMES, Circuit Judges.

**CASE SUMMARY**

**PROCEDURAL POSTURE:** The Government filed a superseding indictment charging defendant with counterfeiting, 18 U.S.C.S. 471, and being a felon in possession of a firearm, 18 U.S.C.S. 922(g)(1). Defendant moved to dismiss the superseding indictment based on a violation of his Sixth Amendment right to a speedy trial. The United States District Court for the District of Colorado granted the motion and dismissed the charges against defendant. The Government appealed. Because Barker factors--one-year delay, relative simplicity of case, insufficient reason for delay, defendant's assertion of speedy trial right, and prejudice to defendant--balanced in defendant's favor, Government violated his Sixth Amendment right to speedy trial, and district court properly dismissed with prejudice charges against defendant.

**OVERVIEW:** The court of appeals analyzed defendant's speedy trial claim de novo, using the four Barker factors, and ultimately agreed with the district court, holding that the Barker factors weighed in favor of a finding that Government had violated defendant's Sixth Amendment right to a speedy trial. First, the one-year delay suffered by defendant was sufficiently lengthy to trigger the Barker analysis, and considering the relative simplicity of defendant's case, the delay was unreasonable. Second, the Government's asserted reason for the delay--i.e., the desire to complete state proceedings on unrelated drug charges before continuing with federal charges--was not sufficient in defendant's case to excuse it. The Government had the obligation to bring defendant to trial in a timely manner and, absent an acceptable justification, the second Barker factor weighed in defendant's favor. Third, defendant twice asserted his right to a speedy trial, a factor weighing heavily in his favor. Fourth, and finally, defendant suffered prejudice as a result of the delay in a number of ways. Thus, the court of appeals held that defendant's Sixth Amendment right to a speedy trial had been violated.

**OUTCOME:** The district court's dismissal with prejudice of the superseding indictment was affirmed.

**LexisNexis Headnotes**

*Criminal Law & Procedure > Appeals > Standards of Review > De Novo Review > Speedy Trial*

The United States Court of Appeals for the Tenth Circuit reviews a defendant's claim that the Government violated the Sixth Amendment's Speedy Trial Clause de novo.

***Constitutional Law > Bill of Rights > Fundamental Rights > Criminal Process > Speedy Trial***

See U.S. Const. amend. VI.

***Constitutional Law > Bill of Rights > Fundamental Rights > Criminal Process > Speedy Trial***

***Criminal Law & Procedure > Pretrial Motions > Speedy Trial > Constitutional Right***

***Criminal Law & Procedure > Trials > Defendant's Rights > Right to Speedy Trial***

***Evidence > Procedural Considerations > Burdens of Proof > Allocation***

Establishing the point when a trial has been unconstitutionally delayed is a difficult proposition. The right to speedy trial is a more vague concept than other procedural rights. It is, for example, impossible to determine with precision when the right has been denied. The United States Supreme Court cannot definitively say how long is too long in a system where justice is supposed to be swift but deliberate. Moreover, although the right is somewhat amorphous, the remedy is severe: dismissal of the indictment. Nonetheless, it is the prosecution's burden (and ultimately the court's) and not the defendant's responsibility to assure that cases are brought to trial in a timely manner.

***Criminal Law & Procedure > Pretrial Motions > Speedy Trial > Constitutional Right***

Barker establishes a four-part balancing test to establish if a defendant's right to a speedy trial has been violated. These factors are: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his desire for a speedy trial; and (4) the determination of whether the delay prejudiced the defendant. A balancing test necessarily compels courts to approach speedy trial cases on an ad hoc basis. No single factor is determinative or necessary, rather all four are considered to determine whether a violation has occurred.

***Criminal Law & Procedure > Pretrial Motions > Speedy Trial > Constitutional Right***

The first Barker factor looks to the length of the delay in pursuing the case against a defendant. This is a double inquiry. First, simply to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from presumptively prejudicial delay. Second, if the accused makes this showing, the court must then consider, as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim.

***Criminal Law & Procedure > Pretrial Motions > Speedy Trial > Constitutional Right***

Delays in pursuing the case against a defendant approaching one year generally satisfy the requirement of presumptive prejudice in the speedy trial analysis.

***Criminal Law & Procedure > Pretrial Motions > Speedy Trial > Constitutional Right***

The general rule is that the speedy trial right attaches when a defendant is arrested or indicted, whichever comes first.

***Criminal Law & Procedure > Pretrial Motions > Speedy Trial > Constitutional Right***

***Evidence > Procedural Considerations > Burdens of Proof > Allocation***

Concerning speedy trial claims, the burden belongs to the Government to provide an acceptable rationale for the delay in pursuing a case against a defendant. Different weights should be assigned to different reasons. A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the Government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

***Criminal Law & Procedure > Pretrial Motions > Speedy Trial > Constitutional Right***

***Evidence > Procedural Considerations > Burdens of Proof > Allocation***

Concerning speedy trial claims, the United States Court of Appeals for the Tenth Circuit agrees with its sister circuits that awaiting the completion of another sovereign's prosecution may be a plausible reason for delay in pursuing the case against a defendant in some circumstances, but that does not necessarily mean that it is a justifiable excuse in every case. Rather, it is the Government's burden to explain why such a wait was necessary in a particular case. In other words, the Government must make a particularized showing of why the circumstances require the conclusion of the state proceedings before the federal proceedings can continue. The mere fact that the defendant was incarcerated on a previous charge for a portion of the delay does not by itself excuse the delay.

***Criminal Law & Procedure > Pretrial Motions > Speedy Trial > Constitutional Right***

A defendant's assertion of his speedy trial right is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right.

***Criminal Law & Procedure > Pretrial Motions > Speedy Trial > Constitutional Right***

An individual claiming the Sixth Amendment violation has the burden of showing prejudice. A court assesses prejudice in light of the interests that the speedy trial right was designed to protect. The courts have identified three main interests: (i) the prevention of oppressive pretrial incarceration; (ii) the minimization of anxiety and concern of the accused; and (iii) minimization of the possibility that the defense will be impaired. Of these interests, the most serious is the hindrance of the defense because the inability of a defendant to adequately prepare his case skews the fairness of the entire system. Because the seriousness of a post-accusation delay worsens when the wait is accompanied by pretrial incarceration, oppressive pretrial incarceration is the second most important Barker factor.

***Criminal Law & Procedure > Pretrial Motions > Speedy Trial > Statutory Right***

The Speedy Trial Act requires that a defendant be tried within 70 days from the filing date of the indictment or from the date on which defendant appears before a judicial officer, whichever date is later.

*Constitutional Law > Bill of Rights > Fundamental Rights > Criminal Process > Speedy Trial*

*Criminal Law & Procedure > Pretrial Motions > Speedy Trial > Constitutional Right*

*Criminal Law & Procedure > Trials > Defendant's Rights > Right to Speedy Trial*

The right to a prompt inquiry into criminal charges is fundamental and the duty of the charging authority is to provide a prompt trial.

### Opinion

**Opinion by:** HENRY

### Opinion

**{595 F.3d 1172} HENRY, Chief Judge.**

**The Supreme Court has called the Sixth Amendment guarantee to a speedy trial{595 F.3d 1173} both an "amorphous" right and a "fundamental" one. Andy Eugene Seltzer's case exemplifies the difficult application of this constitutional protection and particularly, the complexities inherent in the balancing of the defining factors delineated by Supreme Court precedent. The district court granted Mr. Seltzer's motion for dismissal based on a violation of his Sixth Amendment rights. Because we agree that, under the circumstances, Mr. Seltzer's rights were violated, we affirm the district court's dismissal.**

### I. FACTUAL BACKGROUND

#### A. The crime

**A road crew working in Grand Junction, Colorado, discovered what appeared to be counterfeit currency in a trash bag. The bag also contained evidence linking the contents to 2913 D Road in Grand Junction. The Mesa County Sheriff's Office procured a search warrant for the property, which was owned by David Ortego. The search uncovered counterfeit bills, chemicals, and equipment linked to the production of counterfeit currency. The search also revealed several firearms, methamphetamine, marijuana, and a "pay/owe" sheet consistent with drug trafficking. Aplt's App. vol. I, at 0307 (Order, filed Nov. 5, 2008).**

**Andy Eugene Seltzer was on the property when the law enforcement officers arrived. In the room where he slept, the officers found three firearms and ammunition. Additionally, the officers discovered a wallet containing Mr. Seltzer's identification, two counterfeit $ 100 bills, and one genuine $ 100 bill with a serial number matching that found on the counterfeit bills.**

**In another bedroom, the officers found a computer, which they later discovered contained scanned images of a $ 100 bill. The law enforcement officers also found a large trash can outside the home, which contained templates that appeared to have been used to print counterfeit bills, images of bills printed on plain paper, handwritten notes, and miscellaneous other items.**

## B. The initial indictment

On November 2, 2006, the government indicted Mr. Seltzer and Mr. Ortego on one count of manufacturing a counterfeit Federal Reserve Note with the intent to defraud, in violation of 18 U.S.C. 471. Aplt's App. vol. I, at 0015 (Indictment, filed Nov. 2, 2006). The government also charged Mr. Seltzer with three counts of being a felon in possession of a firearm in violation of 18 U.S.C. 922(g)(1) (Mr. Seltzer had previously been convicted of felony possession of a Schedule II controlled substance with intent to distribute) and with one count of aiding and abetting counterfeiting in violation of 18 U.S.C. 2.

Arrest warrants were issued for both Mr. Seltzer and Mr. Ortego. Law enforcement officers arrested Mr. Ortego on November 6, 2006, and he was released on bond the next day. The officers determined that Mr. Seltzer was serving a sentence in the Mesa County Jail on two sets of unrelated drug charges, and thus did not execute the arrest warrant against him.

## C. Deal with Mr. Ortego

On December 7, 2006, Mr. Ortego met law enforcement officers and was offered immunity from prosecution in return for "tell[ing] the truth" about Mr. Seltzer's participation in the counterfeiting. *Id.* vol. II, at 0406. In response, Mr. Ortego stated that he had no knowledge of Mr. Seltzer's involvement in counterfeiting or of Mr. Seltzer's ownership of the firearms found on the premises. On March 21, 2007, however, Mr. Ortego recanted this{595 F.3d 1174} testimony and informed the law enforcement officials that he had knowledge of Mr. Seltzer's counterfeiting activities. Mr. Ortego claimed that Mr. Seltzer had offered him counterfeit bills and that Mr. Seltzer owned the firearms. Mr. Ortego claimed that he had no knowledge of the ownership or origin of the degreasing chemicals used to "wash" the currency. *Id.* vol. I, at 0309.

Assistant United States Attorney Wyatt Angelo determined that, based on a lack of evidence against Mr. Ortego, the government should dismiss the indictment against him. AUSA Angelo also decided not to proceed with the investigation, the arraignment, or a meeting with Mr. Seltzer until after state proceedings on unrelated drug charges were completed. 1

## D. Mr. Seltzer's Motions for Bond and Appointment of Counsel

In early April 2007, Mr. Seltzer obtained the assistance of Amy Ottinger, a bail bonds agent. Mr. Seltzer appeared concerned about the declining health of his mother and was eager to obtain bond so he could care for her. Ms. Ottinger offered funds that should have been sufficient to secure his release on bond. The Mesa County jailer, however, informed Ms. Ottinger that Mr. Seltzer was under a federal detainer pending counterfeiting and weapons charges and refused to release him.

On April 26, 2007, Mr. Seltzer filed a pro se Motion for Bond Status. In this motion Mr. Seltzer also asserted his right to a speedy trial. *Id.* at 0031. Mr. Seltzer's mother had passed away on April 24, 2007, and in his bond status motion, he expressed his desire to attend her funeral on April 27, 2007. On May 11, 2007, Mr. Seltzer's motion for bond status was struck because Ms. Ottinger was not an attorney and her assistance appeared to constitute the unauthorized practice of law without a license. *Id.* at 0036 ("It is clear that there is no showing that Amy Ottinger (Ott Bailbonds) is an attorney authorized to practice law. Upon this basis alone, the motion to strike must be granted."). On June 12, 2007, Mr. Seltzer filed a Motion to Appoint Conflict Free Counsel Without Unnecessary Delay, arguing that had counsel been provided, the district court would not have struck his motion for bond status. In this motion, Mr. Seltzer again asserted his speedy trial rights. *Id.* at 0037-44 (asserting that proceedings take place "without unnecessary delay").

On July 11, 2007, the district court appointed Colleen Scissors to represent Mr. Seltzer. On at least three occasions Ms. Scissors requested that her client appear before a magistrate judge for arraignment. Each time, AUSA Angelo informed Ms. Scissors that Mr. Seltzer would not be appearing before a magistrate judge until the state prosecution was complete.

## E. Mr. Seltzer pleads to state charges

On November 8, 2007, Mr. Seltzer entered a guilty plea to state drug charges in Moffat County, Colorado. On January 29, 2008, the state district court sentenced him to eight and one-half years in the Colorado Department of Corrections for the unrelated state drug charges. On November 29, 2007, Mr. Seltzer entered a guilty plea in Mesa County, Colorado, for other state offenses and, on February 7, 2008, the state court sentenced him to six years in {595 F.3d 1175} the Colorado Department of Corrections for those charges.

Although Mr. Seltzer pled guilty to state charges in late 2007, the agent in charge of the federal investigation conducted no examination nor tested any evidence with respect to the federal prosecution until June 2008. Further, although the government had charged Mr. Seltzer with being a felon in possession of a firearm, no attempt was made to confirm that status until July 2008 (although there was a preliminary inquiry made with the Mesa County Sheriff's Office prior to the indictment against Mr. Seltzer). *Id.* at 0310.

## F. The government's Superseding Indictment and Mr. Seltzer's Motion to Dismiss

On August 6, 2008, the government issued a Superseding Indictment against Mr. Seltzer. The Superseding Indictment dropped the initial charge for counterfeiting and charged Mr. Seltzer with four new counts of counterfeiting. These charges stemmed from the bills the officers found in the wallet they recovered from 2913 D Road. The Superseding Indictment also combined the three felon-in-possession counts into a single count.

On August 14, 2008, Mr. Seltzer filed an Amended Motion to Dismiss the Superseding Indictment. The motion argued that the government violated his Sixth Amendment right to a speedy trial by unduly delaying the prosecution of his case.

## G. The district court's dismissal of the Superseding Indictment

The district court conducted a careful and thorough analysis of Mr. Seltzer's Sixth Amendment claim using the factors established by the Supreme Court in *Barker v. Wingo*, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972). Applying these factors, the district court found that the delay in the government's pursuit of the federal charges against Mr. Seltzer constituted a violation of his Sixth Amendment rights and dismissed the charges against him.

The government now appeals the district court's dismissal. The government makes two main arguments: First, the government claims that the delay in the case was justified due to the state's prosecution of Mr. Seltzer. Second, the government claims that Mr. Seltzer suffered no prejudice as a result of the delay.

## II. DISCUSSION

## A. Standard of review

We review Mr. Seltzer's claim that the government violated the Sixth Amendment's Speedy Trial Clause de novo. *United States v. Dirden*, 38 F.3d 1131, 1135 (10th Cir. 1994).

## B. *Barker* analysis

The Sixth Amendment states that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. Establishing the point when a trial has been unconstitutionally delayed is, concededly, a difficult proposition. As the Supreme Court has readily acknowledged, the "right to speedy trial is a more vague concept than other procedural rights. It is, for example, impossible to determine with precision when the right has been denied. We cannot definitively say how long is too long in a system where justice is supposed to be swift but deliberate." *Barker*, 407 U.S. at 522. Moreover, although the right is somewhat amorphous, the remedy is severe: dismissal of the indictment. Nonetheless, it is the prosecution's burden (and ultimately the court's) and not the defendant's responsibility to assure that {595 F.3d 1176} cases are brought to trial in a timely manner.

The Supreme Court in *Barker* established a four-part balancing test to establish if the defendant's right to a speedy trial has been violated. These factors are: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his desire for a speedy trial; and (4) the determination of whether the delay prejudiced the defendant. As the *Barker* Court stated, "[a] balancing test necessarily compels courts to approach speedy trial cases on an ad hoc basis." *Id.* at 530. No single factor is determinative or necessary, rather all four are considered to determine whether a violation has occurred. *Id.* at 533. We agree with the district court and on de novo review we hold that all four of these factors weigh in favor of a finding that Mr. Seltzer's right to a speedy trial was violated.

### 1. Length of Delay

The first factor looks to the length of the delay in pursuing the case against the defendant. This is a double inquiry. First, "[s]imply to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay." *Doggett v. United States*, 505 U.S. 647, 651-52, 112 S. Ct. 2686, 120 L. Ed. 2d 520 (1992) (quoting *Barker*, 407 U.S. at 530-31). Second, "[i]f the accused makes this showing, the court must then consider, as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." *Id.* at 652.

We find that Mr. Seltzer has satisfied the first prong: the length of the delay crossed the threshold from "ordinary" to "presumptively prejudicial" because it was more than a year. *See United States v. Batie*, 433 F.3d 1287, 1290 (10th Cir. 2006) ("Delays approaching one year generally satisfy the requirement of presumptive prejudice."). "The general rule is that the speedy trial right attaches when the defendant is arrested or indicted, whichever comes first." *Jackson v. Ray*, 390 F.3d 1254, 1261 (10th Cir. 2004). Mr. Seltzer was indicted on November 2, 2006, and the district court dismissed the Superseding Indictment against Mr. Seltzer on November 5, 2008--a delay of over two years. Two years is twice the time presumed to be ordinary. *See Doggett*, 505 U.S. at 652 (the greater the delay, the more likely it is to weigh in the defendant's favor).

But to be sure, given other factors, a lengthy delay may not be unreasonable--and, conversely, even a minor delay may be deemed untimely. For example, a court should take into consideration the nature of the charges, *Barker*, 407 U.S. at 531. And even a two-year interval between charges and trial may not be deemed a "delay" when the charges are complex. But here, neither the

counterfeit charge nor the drug charges, nor the felon-in-possession charges, were complicated. As the district court noted, "[t]he counterfeiting claims involved little more than the use of commonly-available tools to print--according to the officers involved--obviously counterfeit notes." Aplt's App. vol. I, at 0314. Similarly, the other charges, involving simple possession, were also straightforward.

Here, the government had secured the eyewitness and coconspirator testimony of Mr. Ortego in March 2007, and yet over nineteen months later, in November 2008, it still had not proceeded with the prosecution {595 F.3d 1177} of Mr. Seltzer. 2 Accordingly, we conclude that this factor, along with the nature of the charges, suggests that the government waited too long to bring the defendant to trial. Hence, this factor weighs in favor of a finding of a violation of Mr. Seltzer's speedy trial rights.

### 2. Reason for the delay

Besides considering whether the two-year delay was lengthy and unreasonable, the court must also factor in the reasons offered by the government for not bringing a timely suit. This factor is especially important: "the flag all litigants seek to capture is the second factor, the reason for delay." *United States v. Loud Hawk*, 474 U.S. 302, 315, 106 S. Ct. 648, 88 L. Ed. 2d 640 (1986). The burden belongs to the government to provide an acceptable rationale for the delay. *Jackson*, 390 F.3d at 1261 ("The Supreme Court places the burden on the state to provide an inculpable explanation for delays in speedy trial claims."). "[D]ifferent weights should be assigned to different reasons." *Barker*, 407 U.S. at 531. "A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay." *Id.* (footnote omitted).

Here, the major reason asserted by the government for the delay was the desire to complete the state proceedings on unrelated drug charges before continuing with federal charges. Although the Tenth Circuit has never ruled on whether this is an acceptable rationale, at least two of our sister circuits have recognized this reasoning. *United States v. Thomas*, 55 F.3d 144, 151 (4th Cir. 1995) ("We find this to be an obvious reason for delaying Thomas's federal prosecution. . . . To do otherwise would be to mire the state and federal systems in innumerable opposing writs, to increase inmate transportation back and forth between the state and federal system with consequent additional safety risks and administrative costs, and generally to throw parallel federal and state prosecutions into confusion and disarray."); *United States v. Schreane*, 331 F.3d 548, 554 (6th Cir. 2003) ("Simply waiting for another sovereign to finish prosecuting a defendant is without question a valid reason for delay that weighs in favor of the government." (internal quotation marks omitted)); *United States v. Watford*, 468 F.3d 891, 902 (6th Cir. 2006) (same). The Third Circuit, however, recently rejected this as a reasonable justification. *United States v. Battis*, 589 F.3d 673, 2009 WL 4755684 (3d Cir. 2009). The *Battis* court stated: "Once federal prosecutors bring an indictment against a defendant, they have a duty to notify the District Court that the defendant should be arraigned and appointed counsel, and to bring the defendant to trial expeditiously." 589 F.3d 673, *Id.* at *5. Further, the court stated that "[t]his duty persists even when state authorities {595 F.3d 1178} have a strong interest in bringing their own case against the same defendant. The Government cannot indict a defendant and then delay a case indefinitely, without any notice to a federal judge, merely because it is aware of a state proceeding involving the same defendant." *Id.*

We agree with our sister circuits that awaiting the completion of another sovereign's prosecution may be a plausible reason for delay in some circumstances, but that does not necessarily mean

that it is a justifiable excuse in every case. Rather, it is the government's burden to explain why such a wait was necessary in a particular case. In other words, the government must make a particularized showing of why the circumstances require the conclusion of the state proceedings before the federal proceedings can continue. The mere fact that the defendant was incarcerated on a previous charge for a portion of the delay does not by itself excuse the delay. *Jackson*, 390 F.3d at 1262 (finding that the state's negligence in bringing the defendant to trial "is not mitigated by the fact that [the defendant] was incarcerated on a previous charge for a portion of the delay"); *see also Dickey v. Florida*, 398 U.S. 30, 36, 90 S. Ct. 1564, 26 L. Ed. 2d 26 (1970) (finding that incarceration does not make a defendant unavailable "since there have long been means by which one jurisdiction . . . can obtain custody of a prisoner held by another" for purposes of a criminal trial); *Smith v. Hooey*, 393 U.S. 374, 377, 89 S. Ct. 575, 21 L. Ed. 2d 607 (1969) (holding that the defendant's confinement in federal prison does not absolve the state "from any duty at all under the [Sixth Amendment] constitutional guarantee"). Thus, the government needs to show that it has a sufficient justification for waiting for the state proceedings in this particular case. No such showing has been made here. And the typical reasons for respecting ongoing state proceedings as a valid justification for delay are not relevant here.

First, there was no overlap in the charges or proceedings--the federal proceedings at issue here are entirely distinct from the state drug proceedings. In *Thomas*, 55 F.3d at 151, the Fourth Circuit noted that one of the reasons for allowing the state court to finish its proceedings before beginning with the federal proceedings was the desire to avoid conflicting motions or assertions in the different courts. But in Mr. Seltzer's case, the charges were different and unlikely to give rise to such confusion.

Second, concurrent proceedings would not be logistically cumbersome. The district court found that transportation between venues would not be burdensome in this case because "[t]he federal courthouse in Grand Junction is a mere five blocks from the Mesa County Jail, and there is nothing in the record suggesting the burden of transporting Defendant between jurisdictions would have been onerous." Aplt's. App. vol. I, at 0316. In *Thomas*, 55 F.3d at 151, the Fourth Circuit recognized that transportation costs and logistical concerns are one of the reasons for waiting for the end of the other sovereign's proceedings. In this case, this does not appear to be a concern.

Third, the simplicity of the charges is also relevant here, because it demonstrates the relatively light burden that proceeding with the federal prosecution would have imposed upon the government. The government's argument for delaying out of respect for another sovereign is stronger in more complicated cases than it is in more straightforward cases such as this one. For example, in *United States v. Grimmond*, 137 F.3d 823, 828-29 (4th Cir. 1998), the government was justified in delaying the prosecution because of the desire{595 F.3d 1179} to prosecute the defendant and a codefendant together. No such concern is evident here.

Requiring the federal government to affirmatively justify a need to defer to another sovereign's proceedings ensures protection of the public's and the defendant's interest in a speedy trial. To do otherwise results in the Catch-22 we have here: the state refused to release Mr. Seltzer on bond because of the pending federal proceedings; at the same time, the federal prosecutors refused to prosecute him while the state proceedings were ongoing. All the while, Mr. Seltzer sat in jail. Thus, while the existence of an ongoing state proceeding may justify a delay in federal prosecution, the government must demonstrate that such deference was necessary in the defendant's case.

Importantly, as the Court stated in *Barker*, "the ultimate responsibility" for justifying the delay belongs to the government. 407 U.S. at 531. Unlike in *United States v. Toombs*, 574 F.3d 1262, 1274 (10th Cir. 2009), where the defendant requested seven of the nine continuances granted by the district court, none of the delay here can be attributed to Mr. Seltzer's actions or legal tactics.

Although there is no evidence that the government intentionally delayed the case for the explicit purpose of gaining some advantage, the government still bears the burden of bringing a case to trial in a timely fashion, absent sufficient justification. No such justification is present here.

### 3. Mr. Seltzer's assertion of his desire for a speedy trial

The court next looks to whether the defendant asserted his right to a speedy trial. Such an assertion, if present, is given strong weight in deciding whether there has been a speedy trial violation. *See Batie*, 433 F.3d at 1291 ("Perhaps most important is whether the defendant has actively asserted his right to a speedy trial."); *see also Barker*, 407 U.S. at 531-32 ("The defendant's assertion of his speedy trial right, then, is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right.").

Here, Mr. Seltzer, even without the benefits of counsel, twice asserted his speedy trial rights. In both his April 26, 2007 pro se motion for bond status, and in his June 12, 2007 pro se motion for appointment of counsel, Mr. Seltzer requested a speedy trial. Mr. Seltzer brought prompt and repeated requests which put both the district court and the government on notice that the defendant wished to proceed to a prompt resolution of his case. *United States v. Latimer*, 511 F.2d 498, 501 (10th Cir. 1975) ("We may weigh the frequency and force of the objections."). Thus, this factor weighs strongly in favor of Mr. Seltzer.

### 4. Prejudice to Mr. Seltzer

"The individual claiming the Sixth Amendment violation has the burden of showing prejudice." *Toombs*, 574 F.3d at 1275. We assess prejudice in light of the interests that the speedy trial right was designed to protect. The courts have identified three main interests: (i) the prevention of oppressive pretrial incarceration; (ii) the minimization of anxiety and concern of the accused; and (iii) minimization of the possibility that the defense will be impaired. *Id.* (citing *Barker*, 407 U.S. at 532). Of these interests, the most serious is the "hindrance of the defense" because the inability of a defendant to adequately prepare his case skews {595 F.3d 1180} the fairness of the entire system. *Id.* 3 "Because the seriousness of a post-accusation delay worsens when the wait is accompanied by pretrial incarceration, oppressive pretrial incarceration is the second most important factor." *Jackson*, 390 F.3d at 1264.

Here, Mr. Seltzer was prejudiced in at least three ways. 4 First, the delay added to his pretrial incarceration. By not bringing him into court, Mr. Seltzer was denied the right to a bond hearing in state court and kept incarcerated longer than might otherwise be necessary. As the district court stated: "the evidence presented at trial established that [Mr. Seltzer], together with Amy Ottinger, expended considerable effort gathering security to post bond in the state case, but was prevented from doing so because of a federal detainer. Had [Mr. Seltzer] been brought to federal court, he would have been entitled to a detention hearing--and an attorney--on the federal charges." Aplt's App. vol. I, at 0321. Thus, by maintaining a federal detainer, rather than holding a detention hearing, the government assured that Mr. Seltzer would remain in jail until the federal prosecution commenced. *Id.* This type of prolonged pretrial incarceration is a well-established type of prejudice that a defendant may rely upon in making a Sixth Amendment speedy trial claim.

Significantly, Mr. Seltzer suffered an impairment of his ability to defend and prepare his case. As noted by the district court, Mr. Seltzer was denied his right to counsel. Further, during the time he was denied his right to counsel, the government appeared ex parte before the magistrate judge. Although the government indicted Mr. Seltzer in November 2006, the government did not arrest him nor did it bring him before the court, and Mr. Seltzer went over six months before the court appointed counsel (at Mr. Seltzer's request). *Id.* at 0053 (Order, filed June 22, 2007).

Third, Mr. Seltzer was prejudiced by the delay in his initial appearance, as the delay deprived him of a chance to invoke his statutory rights under the Speedy Trial Act at an earlier date. *See* 18 U.S.C. 3161(c)(1). The Speedy Trial Act "requires that a defendant be tried within seventy days from the filing date of the indictment or from the date on which defendant appears before a judicial officer, whichever date is later." *United States v. Gonzales*, 137 F.3d 1431, 1432 (10th Cir. 1998) (holding the defendant's Speedy Trial Act rights were violated). The government did not promptly bring Mr. Seltzer before a judicial officer after the return of the initial indictment, although they did{595 F.3d 1181} following the grand jury's return of the Superseding Indictment. Had the government brought Mr. Seltzer before a judicial officer in timely manner, he would have been afforded the protections of the statutory speedy trial clock at a much early point. Underscoring the prejudice to Mr. Seltzer is the markedly different situation of his co-defendant, Mr. Ortego, who appeared before a judicial officer regarding the initial indictment on November 7, 2006.

### 5. Balancing

"Speedy trial claims require applying a balancing test." *Jackson*, 390 F.3d at 1266. "[T]he right to a prompt inquiry into criminal charges is fundamental and the duty of the charging authority is to provide a prompt trial." *Dickey v. Florida*, 398 U.S. 30, 38, 90 S. Ct. 1564, 26 L. Ed. 2d 26 (1970). None of these four factors is, "a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial." *Batie*, 433 F.3d at 1290 (quoting *Barker*, 407 U.S. at 533).

The balance is decidedly one-sided here: our consideration of the factors to determine whether that fundamental right has been denied all point in one direction. First, the delay suffered by Mr. Seltzer is sufficiently lengthy so as to trigger the *Barker* analysis. Considering the relative simplicity of this particular case, the delay is unreasonable. Second, the government's asserted reason for the delay was not sufficient in this particular case to excuse it. The government has the obligation to bring the defendant to trial in a timely manner and, absent an acceptable justification, this factor weighs in favor of the defendant. Third, Mr. Seltzer twice asserted his right to a speedy trial, a factor weighing heavily in his favor. Fourth, and finally, Mr. Seltzer suffered prejudice as a result of the delay in a number of ways. Accordingly, we hold the Mr. Seltzer's Sixth Amendment right to a speedy trial has been violated.

### III. CONCLUSION

For the foregoing reasons, we affirm the district court's dismissal with prejudice of the Superseding Indictment.

### Footnotes

1

The district court pointed out that "[Mr. Seltzer]--unlike Ortego--was never given the opportunity to try to strike a deal and--once Ortego provided testimony in exchange for clemency--was left in the unenviable position of having to defend against Ortego's testimony. I am left to wonder whether [Mr. Seltzer's] shoe would be on Ortego's foot had [Mr. Seltzer] been brought to court first." Aplt's App. vol. I, at 0321.

2

A delay that may seem insignificant may be deemed too long when the case relies on eyewitness identification or the testimony of live witnesses. When such testimony forms a cornerstone of the government's case, delay becomes of great import given the dangers of memory loss or distortion over time or the risk that the witness may disappear or die. Thus, the Supreme Court in *Barker* cited approvingly a First Circuit case in which that court "thought a delay of nine months overly long, absent a good reason, in a case that depended on eyewitness testimony." *Barker*, 407 U.S. at 531 n.31 (citing *United States v. Butler*, 426 F.2d 1275 (1st Cir. 1970)).

3

In some cases of extreme delay, the defendant need not show specific evidence of prejudice. *Jackson*, 390 F.3d at 1263. Generally, the court requires a delay of six years before allowing the delay itself to constitute prejudice. *Id.* (citing *Doggett*, 505 U.S. at 655).

4

The district court rested its finding of prejudice on the fact that the government strengthened its case during the delay. Aplt's App. Vol. I., at 0318 ("Ample evidence was presented at the hearing to show that in the eighteen-month period in which the Government purposefully refused to bring [Mr. Seltzer] to court, the Government gathered evidence to strengthen its case."). We disagree with the district court that this counts as a form of prejudice. There is no evidence that the government delayed for the *purpose* of improving the case. More fundamentally, although the "impairment to defense" prejudicial analysis is concerned that the defense will be hurt by the delay, new evidence of guilt is not what this analysis had in mind. *See United States v. Trauber*, 238 F.3d 79, 91 (1st Cir. 2001) ("[The defendant] does not point to a single authority to support the novel proposition that the potential strength the government's case may acquire over time amounts to prejudice against the defendant.").

UNITED STATES OF AMERICA, Plaintiff - Appellee, v. COREY L. DARTON, Defendant - Appellant.
UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT
595 F.3d 1191; 2010 U.S. App. LEXIS 3122
No. 09-1137
February 17, 2010, Filed

Editorial Information: Subsequent History

US Supreme Court certiorari denied by Darton v. United States, 177 L. Ed. 2d 348, 20